UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**HAK Y.,**[1]

      **Plaintiff,**

  **v.**                                **Civil Action 2:23-cv-1307**
                                                **Chief Judge Algenon L. Marbley**
**COMMISSIONER OF SOCIAL**        **Magistrate Judge Chelsey M. Vascura**
**SECURITY,**

      **Defendant.**

**REPORT AND RECOMMENDATION**

Plaintiff, Hak Y. ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for a Period of Disability and Disability Insurance Benefits ("DIB"). This matter is before the Court for consideration of Plaintiff's Statement of Specific Errors (ECF No. 9); the Commissioner's Memorandum in Opposition (ECF No. 11); and the administrative record (ECF No. 6). For the reasons that follow, the undersigned **RECOMMENDS** that the Court **AFFIRM** the Commissioner of Social Security's non-disability determination and **OVERRULE** Plaintiff's Statement of Errors.

---

[1] Pursuant to this Court's General Order 22-01, any opinion, order, judgment, or other disposition in Social Security cases shall refer to plaintiffs by their first names and last initials.

# I. BACKGROUND

Plaintiff protectively filed her DIB application on March 23, 2018, alleging that she became disabled beginning November 8, 2017. After Plaintiff's applications were denied at the initial and reconsideration levels, an Administrtive Law Judge ("ALJ") held a telephone hearing on December 8, 2021. Plaintiff waived her right to appear at the hearing, but Plaintiff's counsel attended the hearing, at which a vocational expert ("VE") testified. The ALJ issued an unfavorable determination on December 31, 2021, which became final on February 15, 2023, when the Appeals Council denied Plaintiff's request for review.

Plaintiff seeks judicial review of that final determination. Plaintiff asserts two main contentions of error: (1) the ALJ erred by failing to properly consider Plaintiff's subjective symptoms of vertigo according to SSR 16-3p; and (2) the ALJ erred by failing to include in Plaintiff's residual functional capacity ("RFC")[2] limitations pertaining to her vertigo (Pl's SOE 13–16, ECF No. 9.) The undersigned finds these contentions of errors to be without merit.

# II. THE ALJ'S DECISION

On April 7, 2022, the ALJ issued her decision. The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2023, (R. 16), and that Plaintiff had not been disabled within the meaning of the Social Security Act from the alleged onset date of November 8, 2017, through the date of the decision. (*Id*. at 29–30.) At step

---

[2] A claimant's RFC is an assessment of "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

one of the sequential evaluation process,³ the ALJ found that Plaintiff had not engaged in any substantial gainful activity since November 8, 2017. (*Id.* at 16.) At step two, the ALJ found that Plaintiff had the following severe impairments: nocturnal epilepsy, sensorineural hearing loss with chronic sclerotic changes and tympanic perforation; temporomandibular joint dysfunction (TMJ syndrome); vertigo; depression/adjustment disorder with depressed mood; and anxiety. (*Id.*) The ALJ also found that Plaintiff had the following non-severe impairments: mild right carpal tunnel syndrome; right thumb trigger finger; dry eye syndrome; narrow angles of the bilateral eyes; refractive error; cataract of the bilateral eyes; ptosis of the bilateral eyes; glaucoma; osteopenia; and abdominal pain with possible uterine fibroids. (*Id.* at 16–17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 17–19.) The ALJ then set forth Plaintiff's residual functional capacity ("RFC") as follows:

---

³ Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

3

> After careful consideration of the entire record, the undersigned finds that [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Plaintiff] could frequently climb ramps and stairs, but never ladders, ropes, or scaffolds. She may have difficulty hearing in environments with loud background noise and should avoid jobs that require constant telephone use. [Plaintiff] could work in occupations that do not require fine hearing capability, complex written or verbal communication, frequent verbal communication, or frequent telephone communication. She should avoid concentrated exposure to noise and avoid all exposure to hazards, including unprotected heights, dangerous machinery, and commercial driving. Mentally, [Plaintiff] retains the ability to understand, remember, follow, and complete simple, routine, and detailed task and instructions in a static work environment where changes are minimal and infrequent and introduced in advance. Work pace should not be fast without strict time or production quotas. [Plaintiff] retains the ability to interact with others occasionally and superficially, superficially defined as interacting in an impersonal socially appropriate manner. That interaction is with co-workers, supervisors, and the public.

(*Id.* at 19.) The ALJ determined at step four that Plaintiff was unable to perform any past relevant work as an assembler, motor vehicles. (*Id.* at 28.) At step five, the ALJ, relying on testimony from a VE, found that jobs existed in significant numbers in the national economy that an individual with Plaintiff's age, education, work experience, and residual functional capacity could perform including such representative occupations as cook helper and laundry laborer. (*Id.* at 29.) The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act during the relevant period. (*Id.*)

### III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm a decision by the Commissioner as long as it is supported by substantial evidence and was made pursuant to proper legal standards." *DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) (cleaned up); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). While this standard "requires more than a mere scintilla of evidence, substantial evidence means only such

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moats v. Comm'r of Soc. Sec.*, 42 F.4th 558, 561 (6th Cir. 2022) (cleaned up) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "examine[ ] the record as a whole and take[ ] into account whatever in the record fairly detracts from the weight" of the Commissioner's decision. *Golden Living Ctr. v. Sec'y of Health & Hum. Servs.*, 656 F.3d 421, 425 (6th Cir. 2011) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, where "substantial evidence supports the Secretary's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Finally, even if the ALJ's decision meets the substantial evidence standard, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers v. Comm'r Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV. ANALYSIS

As previously explained, Plaintiff contends that the ALJ erred when analyzing her subjective symptoms of vertigo and by failing to incorporate limits into her RFC that would account for her vertigo. The undersigned considers these contentions of error in turn and concludes that both lack merit.

5

> **A. The ALJ properly considered the extent and severity of Plaintiff's vertigo under SSR 16-3p.**

Plaintiff first contends that the ALJ did not properly consider her subjective complaints of vertigo under SSR 16-3p. (Pl's SOE 13–15, ECF No. 9.) Specifically, Plaintiff contends that the ALJ erred when determining that her subjective symptoms were not entirely supported by the record because they were not supported by objective evidence. (Pl's SOE 13, ECF No. 9.) Plaintiff posits that this was error because vertigo cannot always be confirmed by objective testing. (*Id.*) This contention lacks merit.

When a claimant alleges symptoms of disabling severity, an ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. §§ 404.1529; 416.929(c)(1); SSR 16–3p, 2017 WL 5180304, at*10 (Oct. 25, 2017). First, the ALJ must determine if there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce a claimant's symptoms. Second, the ALJ "must . . . evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [those] symptoms limit [the claimant's] capacity for work." 20 C.F.R. §§ 404.1529(c)(1); 416.929(c)(1).

To evaluate the "intensity, persistence, and limiting effects of an individual's symptoms," the ALJ must consider all available evidence from medical and nonmedical sources

6

including medical opinions. *Id.* In addition, there are seven factors set forth in SSR 16–3p[4] that an ALJ will consider: 1) daily activities; 2) the location, duration, frequency, and intensity of pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment an individual uses or has used to relieve pain or other symptoms; and 8) any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms. SSR 16–3p, 2017 WL 5180304 at *7–8; *see also* 20 C.F.R. § 404.1529(c)(3)(i)–(vii). Although an ALJ is not required to analyze all seven factors he should show that he considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20-CV-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021).

An ALJ's assessment will not be disturbed "absent compelling reason," *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001), and such a determination is "virtually unchallengeable," *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir.

---

[4] SSR 96-7p, 1996 WL 374186 (July 2, 1996) which has been superseded by SSR 16-3p, required an ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires an ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. 2017 WL 5180304, at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). The Sixth Circuit Court of Appeals has characterized SSR 16-3p as merely eliminating "the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016). Therefore, the credibility determination and subjective symptom analysis are not materially different, and case law regarding the former applies with equal force to the latter.

2013) (internal quotation omitted). Accordingly, a reviewing Court is limited to determining whether the ALJ's reasons are supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713-14 (6th Cir. 2012) ("As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]"). Nevertheless, an ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16–3p, 2017 WL 5180304 at *10.

Here, the ALJ explicitly acknowledged that Plaintiff's symptoms included vertigo. The ALJ wrote that Plaintiff "alleged the inability to work due to a number of impairments and related symptoms. Such allegations included hearing loss, weakness in limbs, *dizzy spells*, seizures, and the claimant being in pain a lot." (R. at 20) (emphasis added). The ALJ also wrote that she considered Plaintiff's vertigo when assessing Plaintiff's RFC. (Id. at 25.) Nevertheless, the ALJ found that Plaintiff's statements about the disabling nature of her symptoms were not entirely consistent with the record evidence for a number of reasons. (Id. at 20.)

First, the ALJ explained that Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms were inconsistent. (*Id*.) Substantial evidence supports that explanation. The ALJ's summarization of Plaintiff's medical history, which included vertigo, reflected the inconsistencies. For instance, the ALJ accurately wrote that Plaintiff reported in April 2018 that she was dizzy all the time. (*Id*. at 21) (citing Ex. 10F/22). The ALJ correctly indicated, however, that during roughly the same period, Plaintiff reported that her dizziness was not constant—Plaintiff instead reported that her vertigo was intermittent and that it especially occurred when walking. (*Id*. at 22) (citing Ex. 5F/7). The ALJ also indicated that in January

8

2021, Plaintiff reported again that her dizziness was intermittent. (*Id*. at 24) (citing Ex. 43F). At various times, and as the ALJ also described, Plaintiff also reported that her dizziness was brought on by different triggers. In June and August 2018, Plaintiff reported that she had dizziness with, or induced by, loud sounds. (*Id*. at 22) (citing Exs. 11F 12-13, 21). As the ALJ wrote, however, in November 2020 and November 2021, Plaintiff reported that her vertigo was brought on by head movements. (*Id*. at 24) (citing Ex. 40F); (*Id*. at 25) (citing Ex. 56F)). This was an appropriate consideration. SSR 16-3P, 2016 WL 1119029, at *5 ("A report of . . . inconsistencies in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.");

      Second, when summarizing Plaintiff's history of vertigo complaints, the ALJ accurately wrote that Plaintiff experienced at least some improvement with treatment. The ALJ correctly indicated that treatment notes from September 2020 documented that Plaintiff was on medication that helped with her dizziness. (*Id*. at 23) (citing Ex. 25F). Likewise, the ALJ correctly indicated that January 2020 treatment documented that Plaintiff's dizziness had improved since she had been intermittently using Meclizine. (*Id*. at 24) (citing Ex. 29F/10-12). This was also an appropriate consideration. *See Smith v. Comm'r Soc. Sec.*, 564 F. App'x 758, 763 (6thCir. 2014) (citing *Hardaway v. Secretary*, 823 F.2d 922, 927 (6th Cir. 1987) (evidence that medical issues can be improved when using prescribed drugs supports denial of disability benefits)). An ALJ may consider a "record of any treatment and its success or failure . . . . " SSR 16-3p, 2017 WL 5180304 at *7.

      The ALJ also accurately wrote that Plaintiff had declined a second surgery. As the ALJ indicated, treatment notes from November 2018, April 2019, September 2019, and September and November 2020 all reflected that Plaintiff was reluctant to discuss or pursue surgery. (R. at

9

23, 24 (citing Exs. 16F, 20F, 25F, 35F/3-4, 40F).) In addition, a treatment note dated June 5, 2020, indicated that "[Plaintiff] complains of ongoing issues with dizziness and ear pain, has been following with ENT at OSU who recommended surgical intervention, however patient is not interested in surgery at this time. Reports that her symptoms have been somewhat controlled with current medications." (*Id.* at 843.) When assessing a claimant's subjective symptoms, an ALJ can consider a failure to follow recommended treatment. *See Richendollar v. Colvin*, No. 1:13-cv-495, 2014 WL 4910477, at *5 (S.D. Ohio Aug. 7, 2014) ("A claimant's failure to follow treatment can indicate that he is not as disabled as alleged.") (citing *Mullen v. Bowen*, 800 F.2d 535, 547 (6th Cir. 1986)).

When assessing her subjective symptoms, the ALJ also described Plaintiff's daily activities. The ALJ accurately indicated that in March 2018, Plaintiff was able to climb a flight of stairs or walk a few blocks with no pain or shortness of breath and that she reportedly stayed active and had good functional capacity. (R. at 21) (citing Ex. 1F 19-20). The ALJ also correctly wrote that during a consultative examination, Plaintiff was reportedly able to cook, clean, do laundry, and shop for groceries. (Id. at 23) (citing Ex. 13F). Although there is a difference between routine personal care and full-time work, daily activities are a factor that an ALJ can consider. *See* 20 C.F.R. § 404.1529(c)(3)(i) (directing consideration of daily activities when assessing subjective symptoms including pain).

Last, the ALJ noted a lack of objective evidence supporting Plaintiff's statements about the intensity, persistence and limiting effects of her symptoms. For instance, the ALJ described all of the following examination findings from 2018. A Dix-Halpike manuever was negative for rotary nystagmus. (R. at 20 (citing Ex. 2F 1-4).) In early May, Plaintiff's examination was normal aside from her decreased hearing and sclerotic changes. (*Id*. at 21 (citing Ex 10F 25-27).)

10

Plaintiff's electroencephalogram was normal. (*Id*.) (citing Ex. 4F/6). Plaintiff's motor examination was also normal. (Id. at 21-22) (citing Ex. 5F/2-4). At the end of May, Plaintiff's MRI results showed no acute intercranial abnormality, but she had congenitally hypoplastic or chronically opacified bilateral mastoid air cells. (*Id*. at 22) (citing Ex. 6F). An audiogram showed that moderate to severe hearing loss in Plaintiff's right ear and mild to moderate loss in her left ear, but she still had 96 and 88 percent word recognition scores. (*Id*.) (citing Ex 11F/1-5). In June, imaging revealed extensive bilateral chronic otomastoid inflammatory disease with interval left surgery since 2017. (*Id*.) (citing Ex. 11F/10). But Plaintiff also had a normal examination and was advised to wait four months to allow her ear to heal completely after her ear surgery. (*Id*.) (citing Ex. 11F/12-13). In late June, Plaintiff's hearing was decreased to finger rub, but she had otherwise normal examination results. (*Id*.) (citing Ex. 9F/2-4.) In July, Plaintiff was noted to be ambulating normally and that she was active, alert, and oriented. (*Id*.) (citing 10F 33-35). In August and September, Plaintiff's examinations were normal. (*Id*.) (citing Exs. 12F; 14F). In November, Plaintiff's examinations were also normal aside from her typical decreased hearing, chronic sclerotic changes, and a swollen canal with discharge. (*Id*. at 23) (citing Exs. 5F; 16F).

The ALJ also described all of the following 2019 examination findings. Although testing showed that Plaintiff had mild to moderate hearing loss on the left, moderately severe hearing loss on the right, and complete opacification of the right mastoid air cells, notes from April showed that she had clear pitch and clarity as well as a normal examination. (*Id*.) (citing Exs. 18F; 19F; 20F). Aside from decreased hearing and sclerotic changes, Plaintiff had normal examinations in August and September. (*Id*.) (citing Exs. 24F; 25F). An audiogram at that time showed that Plaintiff had severe hearing loss on the right, and moderate to moderately severe

hearing loss on the left, but she still had 100 and 96 percent word recognition scores. (*Id*.) (citing Ex. 29F/1). She also had a normal examination in November. (*Id*. at 23-24) (citing Ex. 26F).

Further, the ALJ described all of the following 2020 examination findings. In January, Plaintiff had a normal examination aside from crepitus popping and bilateral pain in her TMJ's. (R. at 24) (citing 29F 10-12). Plaintiff's examinations were again normal in February and June aside from her typical decreased hearing and sclerotic changes with discharge. (*Id*.) (citing Exs. 30F; 33F; 35F 10-14). A July audiogram showed that Plaintiff had 92 and 96 percent word recognition scores. (*Id*.) (citing 34F/8). Plaintiff had a normal examination in September. (*Id*.) (citing Ex. 35F/3-4). In November, Plaintiff's examination was normal and no imbalance was noted. (*Id*.) (citing 40F). Imaging also revealed that opacification had slightly improved in her left middle ear and had remained stable on her right. (*Id*.) (citing 45F/7.) Plaintiff's examinations in December were also normal. (*Id*.) (citing Exs. 41F; 42F). The ALJ further noted that Plaintiff had normal examinations in March and November 2021. (R. at 24-25) (citing Exs. 47F; 48F; 56F).

It was appropriate for the ALJ to consider these objective findings. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms); SSR 16-3P, 2016 WL 1119029, at *5 ("A report of minimal or negative findings . . . in the objective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms."); *Moruzzi v. Comm'r of Soc. Sec.*, 759 F. App'x 396, 404 (6th Cir. 2018) (affirming ALJ's decision to discount plaintiff's subjective complaints regarding the severity of pain from her physical impairments in part due to lack of confirming objective evidence). Moreover, contrary to Plaintiff's assertions, the ALJ's detailed discussion of the evidence demonstrates that

12

a lack of objective support was only one of at least four factors that the ALJ considered. Therefore, the ALJ did not reversibly err by considering the lack of objective support. *See Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1529) (explaining that an ALJ can consider a lack of objective medical evidence supporting a claimant's subjective symptoms even though an ALJ cannot reject those symptoms "solely" on this basis).

Accordingly, the undersigned concludes that there is no compelling reason to disturb the ALJ's subjective symptom assessment. Plaintiff's first contention of error lacks merit.

### B. The ALJ's RFC determination is supported by substantial evidence.

Plaintiff's second contention of error, which is closely related to her first, is that the ALJ erred by failing to incorporate into her RFC limitations that accounted for her vertigo. (Pl's SOE 15, ECF No. 9.) Plaintiff argues that "given the significant complaints of dizziness when lifting, walking, reaching, looking up and down and side to side, the ALJ's finding that the Plaintiff can perform a full range of work at all exertional levels is simply not supported by the overall evidence." (*Id.*) Specifically, Plaintiff argues that "[i]t is inconceivable that a person with such significant pain and dizziness could be on their feet or walking most of the day or could lift 10 to 25 pounds frequently and up to 50 pounds occasionally as required by work at the medium exertion level." (*Id.*) In short, Plaintiff argues that the ALJ should have found that she had more restrictive walking, standing, and lifting limits. This contention of error lacks merit.

A claimant's RFC is an assessment of "the most [he] can still do despite [his] limitations" "on a regular and continuing basis." 20 C.F.R. § 404.1545(a)(1), (b)–(c). The determination of a claimant's RFC is an issue reserved to the Commissioner. *Shepard v. Comm'r of Soc. Sec.*, 705 F. App'x 435, 442 (6th Cir. 2017) ("An RFC is an 'administrative finding,' and the final responsibility for determining an individual's RFC is reserved to the Commissioner."). Although

the ALJ will consider opinions of treating physicians "on the nature and severity of your impairment(s)," opinions on issues reserved to the Commissioner are generally not entitled to special significance. 20 C.F.R. § 404.1527(d); *Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007). Still, substantial evidence must support the Commissioner's RFC finding. *Berry v. Astrue*, No. 1:09-cv-411, 2010 WL 3730983, at *8 (S.D. Ohio June 18, 2010). The Social Security Act and agency regulations require an ALJ to determine a claimant's RFC based on the evidence as a whole. 42 U.S.C. §§ 423(d)(5)(B).

Plaintiff asserts that the ALJ should have included in her RFC more restrictive walking, standing, and lifting limits. And to be sure, one of Plaintiff's medical providers, Dr. Co-Faustino, opined that Plaintiff could sit for only one hour in a workday, could stand for only three hours in a workday, and could walk for only thirty minutes in a workday. (R. 840.) Dr. Co-Faustino also opined that because of her dizziness, Plaintiff: (1) could never bend at the waist, kneel/crouch, climb, or balance because of dizziness; (2) was limited to occasionally lifting only three pounds; and (3) could never reach above or below her shoulders. (*Id.*)

But the ALJ found that Dr. Co-Faustino's opinion was not persuasive. (*Id.* at 27.) The ALJ explained that in one form, Dr. Co-Faustino inconsistently opined that Plaintiff could perform light work, but could never push, pull, or lift. (*Id.*) The ALJ also found that Dr. Co-Faustino's opinion that Plaintiff could not perform eight hours total of work in a day and could only lift three pounds were inconsistent with Plaintiff's physical examinations, which were repeatedly unremarkable or normal. (*Id.*). Plaintiff does not, however, challenge the ALJ's assessment of Dr. Co-Faustino's opinion. Nor does she point to evidence in the record supporting more restrictive walking, standing, and lifting limits.

Moreover, the state agency reviewers in this case both found that Plaintiff was capable of medium work/walking/sitting/lifting. The ALJ determined that these recommended findings were partially persuasive and incorporated them into Plaintiff's RFC. (R. at 26.) This constituted substantial support for the ALJ's medium work/walking/sitting/lifting restrictions. And Plaintiff does not challenge the ALJ's assessment of the reviewers' findings.

For these reasons, the undersigned concludes that the ALJ did not err by failing to include in Plaintiff's RFC more restrictive walking, standing, and lifting limits to account for Plaintiff's vertigo. Therefore, Plaintiff's second contention of error lacks merit.

## V. RECOMMENDED DISPOSITION

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's non-disability determination and **OVERRULE** Plaintiff's Statement of Specific Errors. (ECF No. 8.)

## VI. PROCEDURE ON OBJECTIONS

If any party objects to this R&R, that party may, within fourteen (14) days of the date of this R&R, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the R&R or specified proposed findings or recommendations to which objection is made. Upon proper objections, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R *de novo*, and also operates as a

waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                        /s/ *Chelsey M. Vascura*
                                        CHELSEY M. VASCURA
                                        UNITED STATES MAGISTRATE JUDGE